UPON REHEARING EN BANC
MOON, Chief Judge.
Darryl Lee White was convicted of possession of cocaine with intent to distribute in violation of Code § 18.2-248. On February 18, 1997, a panel of this Court, with one judge dissenting, affirmed the conviction. See White v. Commonwealth, 24 Va.App. 284, 481 S.E.2d 486 (1997). Upon rehearing en banc, White raises two questions: (1) whether the police lacked probable cause to conduct a warrantless search and seizure; and (2) whether the evidence is sufficient to support his conviction. Finding no error, we affirm.
On December 30, 1994, at approximately 9:15 p.m., Officers Nesselroade, Soyers, and Riley were on duty riding together in a patrol car in Lynchburg, Virginia. Nesselroade observed a group of five to ten males in a semicircle located between 613 and 615 Federal Street. One of the men was standing with his back to the street facing the other men. The group was standing next to a beige Cadillac which Nesselroade recognized as belonging to White.
As the officers approached, they heard a shout of “5-0,” a street term for police. The man facing the group turned around and, from a distance of approximately twenty-five feet, Nesselroade recognized White. The entire group of men ran, leaving the Cadillac’s motor running and one of its doors wide open. Nesselroade watched White and observed that his hand was clenched and that as he ran he made a downward motion and opened his fist. A large white object fell from his hand and onto the ground. Nesselroade proceeded to that spot, retrieved the object, which from his experience appeared to be a piece of cocaine, and placed it in his shirt pocket. The substance was later determined to be 1.54 grams of cocaine.
*665 While Nesselroade retrieved the cocaine, Soyers and Riley followed the men who had run behind the residences. When the officers reached the rear of the residences, they found White sitting on the back steps of one of the houses. The officers had White stand and patted him down for weapons. Soyers knew White and called in a warrant check. Nesselroade heard the warrant check on his radio and before a response was received, he radioed Soyers and asked if they had custody of White behind the house. Soyers replied affirmatively. Nesselroade testified, “I told them to bring him around front, that I got the dope that he dropped.”
Soyers and Riley took White to the front of the residence where Nesselroade arrested White on the basis of the cocaine he had observed White drop. Nesselroade searched White and either Riley or Soyers handed Nesselroade a stocking cap they had found on White which contained $581 in various denominations. Nesselroade also found a pager on White.
After searching White, Nesselroade looked into the beige Cadillac near where White and the other men had been standing and which Nesselroade testified he recognized as White’s vehicle. Nesselroade saw what he believed to be crack cocaine shavings on the seat and floorboard. Entering the car to recover the shavings, Nesselroade also discovered, underneath an armrest, a digital scale partially wrapped in a brown paper bag.
Nesselroade testified that upon questioning, White stated that crack cocaine was present where he had been standing, that he knew different ways to weigh it, that he was familiar with the price of crack cocaine, and that it did sell for as much as the police believed. White also stated that the scale in the car did not belong to him. Nesselroade testified that White had not been informed that a scale had been found in the Cadillac prior to the time that White made the statement that he did not own the scale.

Search and Seizure

White argues that his initial detention by Soyers and Riley was an unreasonable seizure of his person and that, conse *666 quently, the pager, the stocking cap and its contents, and his statement should have been excluded as fruits of an unlawful search and seizure.
In considering a trial court’s ruling on a suppression motion, we view the evidence in the light most favorable to the Commonwealth, and the decision of the trial judge will not be disturbed unless plainly wrong. Greene v. Commonwealth, 17 Va.App. 606, 608, 440 S.E.2d 138, 139 (1994).
Here, White was initially detained by officers executing a Terry stop and frisk. At the point that the officers approached White and patted him down, the record indicates that they had no information from Nesselroade. Consequently, to have been a lawful Terry stop and frisk, the officers’ own observations and knowledge must have provided them with an articulable and reasonable suspicion of White’s involvement in criminal activity. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968).
Officers Soyers and Riley observed a group of men gathered around a car at approximately 9:15 p.m. on a winter night. They heard someone yell a street term for the police and then saw the men run behind a house, leaving the engine of the Cadillac running and one of its doors wide open. Officers Soyers and Riley chased the group of men behind the houses and found White sitting on the steps of one of the houses, despite the time of the year and the time of day. Officer Soyers recognized White from previous encounters with him and called in a warrant check.
Viewed together, this evidence supports a finding that Officers Soyers and Riley had an articulable and reasonable suspicion that the group had been engaged in some criminal activity and that White was a member of the group. See id. at 21, 88 S.Ct. at 1879-80; Thomas v. Commonwealth, 16 Va. App. 851, 856, 434 S.E.2d 319, 322 (1993) (close physical proximity and close proximity in time support a finding of an articulable suspicion sufficient to justify a Terry stop); Smith v. Commonwealth, 12 Va.App. 1100, 1103, 407 S.E.2d 49, 51-52 *667 (1991) (noting that “circumstances we may consider [in a Terry-stop analysis] include ‘the “characteristics of the area” where the stop occurs, [and] the time of the stop, whether late at night or not’ ”) (quoting Williams v. Commonwealth, 4 Va.App. 58, 67, 354 S.E.2d 79, 87 (1987)); Richards v. Commonwealth, 8 Va.App. 612, 616, 383 S.E.2d 268, 271 (1989) (“Trained and experienced police officers ... may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.”) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 884-85, 95 S.Ct. 2574, 2581-82, 45 L.Ed.2d 607 (1975)). We therefore hold that the trial court’s findings are supported by the evidence.

Sufficiency of the Evidence

White asserts that the lighting was insufficient and the distance too great for Nesselroade to have observed what, if anything, White dropped. He further contends that Nesselroade was looking for drug dealers and that “[Nesselroade’s] previous encounter with [White], his expectations, fears, and anticipations ... colorfed] his interpretation in an ambiguous situation.” On appeal, the evidence is to be viewed in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The trial court’s verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 385, cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).
Here, there is sufficient evidence to support the trial court’s finding that White possessed cocaine. Nesselroade testified that he observed White possess and discard cocaine. It is for the trial court to make determinations of credibility. Myers v. Commonwealth, 11 Va.App. 634, 400 S.E.2d 803 (1991). In addition to Nesselroade’s direct observations, the record indicates that White made statements to the police indicating that crack cocaine was present at the time he was observed.
*668 The record also contains evidence sufficient to support the trial court’s finding that White possessed cocaine with intent to distribute. “Because direct proof of intent is often impossible, it must be shown by circumstantial evidence.” Servis v. Commonwealth 6 Va.App. 507, 524, 371 S.E.2d 156, 165 (1988). Circumstantial proof of a defendant’s intent includes the quantity of the drug discovered, the packaging of the drugs, and the presence or absence of drug paraphernalia. Id. at 524-25, 371 S.E.2d at 165.
Here, White was found to have possessed 1.54 grams of cocaine, a relatively small amount. “‘Possession of a small quantity creates an inference that the drug is for personal use.’ ” Id. at 524, 371 S.E.2d at 165 (quoting Monroe v. Commonwealth 4 Va.App. 154, 156, 355 S.E.2d 336, 337 (1987)). Nevertheless, possession of a small amount of a drug, “when considered with other circumstances, may be sufficient to establish an intent to distribute.” Id. Possession of drug paraphernalia and significant amounts of money are among the circumstances which may serve to negate an inference of possession for personal use. In addition to 1.54 grams of cocaine, evidence was presented that White possessed a pager, $581 in cash, and an electronic scale. We have regularly recognized pagers as tools of the drug trade. See Wilkins v. Commonwealth 18 Va.App. 293, 296, 443 S.E.2d 440, 442 (1994). Possession of a large sum of cash, especially in small denominations, is also regularly recognized as a factor indicating intent to distribute. See Colbert v. Commonwealth 219 Va. 1, 4, 244 S.E.2d 748, 748-49 (1978); Glenn v. Commonwealth, 10 Va.App. 150, 155, 390 S.E.2d 505, 508 (1990). White’s possession of an electronic scale concealed in his car and the crack cocaine shavings also found in the car provide a sufficient basis to support an inference that White was engaged in cutting up and weighing cocaine in his car. In view of White’s possession of cocaine, the drug paraphernalia, and the large sum of money, we find the record sufficient to support the trial court’s finding that White possessed cocaine with intent to distribute. We therefore affirm.

Affirmed.