COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Senior Judge Overton
Argued at Norfolk, Virginia


SCLESTER UZZLE, JR.

MEMORANDUM OPINION[*] BY
v.    Record No. 0192-98-1          JUDGE RICHARD S. BRAY
                                         APRIL 13, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
Westbrook J. Parker, Judge

Michael J. Lutke, Assistant Public Defender,
for appellant.

John H. McLees, Jr., Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Sclester Uzzle, Jr. (defendant) was convicted in a bench

trial for possession of cocaine with intent to distribute, a

violation of Code § 18.2-248.  On appeal, defendant challenges

the sufficiency of the evidence to support the conviction.

Finding no error, we affirm the trial court.

The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

In reviewing the sufficiency of the evidence, we examine

the record in "the light most favorable to the Commonwealth,

---

[*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

granting to it all reasonable inferences fairly deducible therefrom," Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987), discarding all conflicting evidence of the accused. See Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993). The credibility of witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of a trial court will be disturbed on appeal only if plainly wrong or unsupported by the evidence. See Code § 8.01-680.

I.

On the evening of May 31, 1997, Isle of Wight Deputy Sheriff Timothy Worrell was engaged in undercover surveillance of a parking area that served the Windsor Court Apartments. Positioned in the rear of an unmarked vehicle and aided by a telescopic device, Worrell observed the activities of defendant and an unidentified man from 8:05 p.m. until 9:30 p.m. Worrell testified that defendant

> appeared to be working with [the other] male
> . . . [who] would approach . . . vehicles,
> make verbal contact, . . . and then would
> make some type of hand-to-hand exchange.
> After this would take place, [Worrell] could
> see what appeared to be money being handed
> to [defendant] from the other . . . male.

As Worrell watched, the man approached "ten to twelve" cars and, "after every . . . two to three . . ., he and [defendant] would get together."

Worrell further recalled that,

> [a]t 9:30 p.m., the . . . unknown . . . male left the premises . . . and [defendant] began approaching vehicles . . . . After he would walk up to the car [and briefly talk] with the people, he would leave and go behind . . . a six, seven foot fence enclosed around [a] dumpster. He would . . . then come out and walk back up to the vehicle, make some type of reaching in motion as if he was handing someone something.

Defendant interacted with the occupants of "four or five vehicles" and walked behind the dumpster, enclosed on three sides by the fence, on each occasion. Worrell noticed that defendant went to a white Honda car parked "right behind the dumpster" "two or three times," "raise[d] the trunk and then shut the [lid] back down," but was unable to "tell if [defendant] was fiddling or anything" in the trunk. Worrell acknowledged that "other people . . . were in the . . . area," although "not in the close proximity that [defendant] went to the fence."

At approximately 10:45 p.m., Worrell summoned Sheriff's Captain Joseph Willard to the scene. As Willard and Deputy Lindsay arrived, defendant was seen "giving . . . change" to an unknown woman. Willard advised defendant "why [they] were

there," and "did [a] pat . . . down . . . [for] weapons." A consent search of defendant's person produced two pagers and "some change." Willard communicated his findings to Worrell, and Worrell directed him "to the dumpster site." During the encounter, defendant was "gesturing his eyes towards the dumpster area." When Willard "checked there," he "found two canisters sitting on the rail inside of the fence," "just a hand reach in," at a point where the "fence was leaned back." Upon inspection, Willard discovered that the canisters contained sixteen "rocks" of cocaine.

A subsequent consent search of the Honda revealed an open box in the trunk which contained "a wad of U.S. currency folded up and stuck beside [a] distributor cap." The currency totaled $586, specifically, (1) $100 bill, (1) $50 bill, (20) $20 bills, (3) $10 bills, (1) $5 bill, and (1) $1 bill. Defendant claimed that his sister owned the Honda and denied knowledge of the money.

Qualified as an expert in the sale and distribution of cocaine in Isle of Wight County, Worrell testified that "[i]t's very common for cocaine to be packaged in a container like [the canisters found]. They take the cocaine out of the container and hand the rock to the [purchaser]" without separate packaging. Worrell opined that each rock would sell for $20 and that a $20 bill was the customary currency in such transactions.

Defendant's wife testified that she owned the vehicle and had placed the money in the trunk, hidden in a "closed" box and unknown to defendant. Other defense witnesses testified that defendant passed them cigarettes from the car while they talked with him in the parking area at approximately 10:00 p.m. on the offense date. Defendant's niece recalled speaking with him from her car "around 10:00 p.m." Defendant testified that he had arrived at the Windsor Court Apartments to "play cards" in the early afternoon and "went outside . . . to stretch" at approximately 9:30 or 10:00 p.m. for "about thirty-five minutes." He denied approaching any vehicles earlier in the evening, opening the trunk of the Honda, or walking behind the dumpster.

## II.

It is well settled that

> possession of a controlled substance may be actual or constructive. "To support a conviction based upon constructive possession, 'the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.'"

McGee v. Commonwealth, 4 Va. App. 317, 322, 357 S.E.2d 738, 740 (1987) (citations omitted). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence,

provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983) (citations omitted), cert. denied, 465 U.S. 1109 (1984). However, the Commonwealth "'is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'"  Cantrell v. Commonwealth, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988) (citation omitted).  "The hypotheses which the prosecution must reasonably exclude are those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'"  Id. at 289-90, 373 S.E.2d at 338-39 (citation omitted).

Here, the evidence disclosed that both defendant and his companion were repeatedly approaching cars and engaging in exchanges with the occupants over a period of several hours. The unidentified man was seen occasionally passing money to defendant.  Later, while alone, defendant continued to stop and converse with persons in automobiles, disappear behind the dumpster in the vicinity of the hidden cocaine, return to the waiting car and effect an exchange.  He sometimes opened the trunk of the Honda, parked adjacent to the dumpster, which contained substantial cash in denominations consistent with the sale of cocaine "rocks" like those found in the canisters.

Additionally, defendant possessed two pagers, "regularly recognized . . . tools of the drug trade." White v. Commonwealth, 25 Va. App. 662, 668, 492 S.E.2d 451, 454 (1997) (en banc).

Such circumstances sufficiently proved that defendant was distributing cocaine to persons in automobiles from a cache within the dumpster fence and depositing the proceeds in the trunk of his wife's car. Defendant's lies to police, and, later, at trial, provided further indicia of guilt. See, e.g., Daung Sam v. Commonwealth, 13 Va. App. 312, 320, 411 S.E.2d 832, 837 (1991).

Accordingly, we affirm the decision of the trial court.

Affirmed.

Benton, J., dissenting.

To support a conviction based upon constructive possession, "'the Commonwealth must point to evidence of acts, statements or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)). "But mere proximity to a controlled drug is insufficient to establish possession." Fogg v. Commonwealth, 216 Va. 394, 395, 219 S.E.2d 672, 673 (1975).

> [P]robability of guilt is insufficient to warrant a criminal conviction. Suspicious circumstances "'no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.'" Suspicious circumstances alone are not sufficient to prove knowing possession of a controlled substance.

Burchette v. Commonwealth, 15 Va. App. 432, 438-39, 425 S.E.2d 81, 86 (1992) (citations omitted).

The evidence proved that Sclester Uzzle, Jr. did not actually possess cocaine. He had no cocaine on his person and no evidence proved that he touched the containers of cocaine that the police found sitting on a rail inside the fence, which

–

surrounded three sides of the large trash "dumpster."  The surveillance officer saw Uzzle go behind the fenced area but could not see his activity because the dumpster obstructed the officer's view.  The evidence proved that the fenced area was in the parking area of an apartment complex and that other people were walking by the fenced area.

The officers detained neither the vehicles that Uzzle approached nor any of the other persons who approached the vehicles.  Thus, the officer could only have speculated as to the nature of Uzzle's contact with those persons.  Indeed, the conviction is based upon pure speculation concerning Uzzle's activities.  In a criminal case, where the quantum of proof must be beyond a reasonable doubt, the imperative to secure a conviction free of speculation, surmise, and conjecture is constitutionally based.  See In re Winship, 397 U.S. 358 (1970). "[V]erdict[s] . . . based only upon speculation and conjecture . . . cannot be permitted to stand."  Dunn v. Commonwealth, 222 Va. 704, 705-06, 284 S.E.2d 792, 793 (1981).

For these reasons, I would reverse the conviction.