COURT OF APPEALS OF VIRGINIA


Present:  Judge Bray, Senior Judges Cole and Overton
Argued at Richmond, Virginia


DAVID COTTON

MEMORANDUM OPINION[*] BY
v.    Record No. 1541-98-2          JUDGE NELSON T. OVERTON
                                        JANUARY 27, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
James E. Kulp, Judge

Carl C. Muzi for appellant.

Robert H. Anderson, III, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


David Cotton, appellant, appeals his conviction of

possession of methamphetamine with the intent to distribute.  He

raises the following issues on appeal:  (1) whether the officer

had reasonable suspicion to stop and seize appellant's vehicle;

(2) whether the officer had probable cause to seize the bag in

the car based on the "plain view" doctrine; (3) whether the

officer had probable cause to arrest appellant; (4) whether the

officer had the authority to search appellant; and (5) whether

the evidence was sufficient to convict appellant of the

possession of methamphetamine with the intent to distribute.

Finding no error, we affirm the conviction.

_____

    * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

FACTS

The evidence proved that Investigator Douglas Perry was screening packages for illegal narcotics shipments at a Federal Express package distribution center in Henrico County on September 18, 1997. Perry had twelve years of experience as a law enforcement officer, four of which were with the Henrico Narcotics Unit. At about 8:40 a.m., as Perry was leaving the facility, he saw a man seated in the passenger seat of a parked red car in the parking lot. The man had swollen eyes, looked nervous, and appeared to be watching Perry as he drove through the parking lot.

Perry thought the man's behavior was unusual, so he wrote down the license plate number of the vehicle and determined the identity of the registered owner of the vehicle. The car was registered to a Corey Johnson, whom Perry knew as a person who was previously involved with illegal narcotics. The address given for Johnson was also an address Perry recognized as a location of prior undercover drug operations.

Perry also saw a man with a long ponytail and a baseball cap standing at the counter in the Federal Express office. The man retrieved a package and left. Perry believed that this man was the driver of the red car. Perry obtained a copy of the Federal Express label from the package the man had just retrieved. The label contained eight characteristics that Perry believed, based on his training and experience, indicated that

-

the package possibly contained drugs.  These characteristics were:  a handwritten label, misspelled words, a signature release, payment by money order, shipment to an area known for drug activity, shipment from an area known as a source city for narcotics, item shipped "priority overnight" with a guaranteed delivery time, and item shipped from one individual to another individual.  The Federal Express employee also told Perry that the man failed to show identification when he retrieved the package.  This also aroused Perry's suspicions.  Perry testified that he had inspected over one thousand suspicious packages and had found narcotics in about fifty percent of those packages.

Perry testified that he suspected that the package possibly contained narcotics, so he continued his investigation.  Perry, who was dressed in plain clothes and drove an unmarked police vehicle, went to the address on the label and called for back-up officers.  As the officers approached the address, appellant and the man Perry saw sitting in the red car at the Federal Express office exited the apartment.  Appellant had a ponytail, wore a baseball cap, and was dressed like the man Perry saw at the Federal Express counter.  He also carried a brown paper bag.

The two men entered the red car, with appellant driving the car.  They looked at Perry, then rapidly drove away.  As Perry followed the car, the car accelerated rapidly and exited the apartment complex through an alley in the rear.  Perry followed the car, and he saw that the two men repeatedly looked back at

-

him.  Perry activated his blue lights and siren; however, the red car accelerated and made numerous turns until it reached a dead end parking lot in an apartment complex.  Perry and the other officers stopped behind appellant's vehicle.

Appellant exited the car, approached Perry and asked, "What's this all about? . . .  Why are you stopping me?"  Perry identified himself as a police officer.  He told appellant that he was a narcotics investigator and had been investigating possible drug deliveries at the Federal Express office.  Perry asked appellant for identification, and appellant said that he had none with him.  Appellant returned to the red car and sat in the driver's seat of the car.

Perry approached the car and asked appellant if he had picked up a package at the Federal Express office.  Appellant replied, "Yes," but he said that the package was at the apartment.  Perry then saw a brown paper bag in plain view on the floor behind the driver's seat of the car.  Inside the bag, Perry could see the same Federal Express label that he had seen a copy of at the Federal Express office.  Perry could also see a Federal Express package, plastic bags with the corners removed, baggie corners, and a "bundle of masking tape that had been ripped open."  Based on his prior training and experience, Perry testified that he often saw baggie corners and packages wrapped in masking tape as part of illegal drug trafficking.  Perry asked appellant to let him see the brown paper bag, and

-

appellant refused to do so, stating, "Not without a search warrant."  Perry replied that he did not need a search warrant because the bag was in plain view.  As Perry reached for the bag, appellant exited the car and tried to flee.  The officers stopped appellant and handcuffed him.

Perry conducted a pat-down search for weapons as appellant lay on the ground.  During the pat-down, Perry felt "a hard substance that was in a plastic outer container or something" in appellant's groin area.  Perry stated that he "immediately recognized it as drugs" because the groin area is a common place for persons to carry drugs.  Perry retrieved the container and recovered over fifty-six grams of methamphetamine.  The drugs were packaged in eight "corner" baggies, containing about 3.5 grams of methamphetamine in each bag, and one "larger" baggie, containing about one ounce of the drug.  Perry testified that the quantity of recovered methamphetamine and the packaging of the drugs were inconsistent with personal use.

Appellant filed a motion to suppress, contending that Perry did not have a reasonable, articulable suspicion to stop appellant's car; that Perry did not have probable cause to seize the bag found in the rear floor of the car based on the "plain view" doctrine; that Perry did not have probable cause to arrest appellant; and that Perry did not have the authority to search appellant.  The trial court denied the motion to suppress, and,

-

sitting without a jury, convicted him of possessing

methamphetamine with the intent to distribute.

ANALYSIS

I.  The Stop

In reviewing a trial court's denial of a motion to

suppress, we are bound to review de novo the ultimate questions

of reasonable suspicion and probable cause.  See Ornelas v.

United States, 517 U.S. 690, 699 (1996).  However, we "review

findings of historical fact only for clear error and . . . give

due weight to inferences drawn from those facts by resident

judges and local law enforcement officers."[1]  Id.

"If a police officer has reasonable, articulable suspicion

that a person is engaging in, or is about to engage in, criminal

activity, the officer may detain the suspect to conduct a brief

investigation without violating the person's Fourth Amendment

protection against unreasonable searches and seizures."  McGee

v. Commonwealth, 25 Va. App. 193, 202, 487 S.E.2d 259, 263

(1997) (en banc).  Reasonable suspicion is "'a particularized

and objective basis' for suspecting the person stopped of

---

[1] "'Clear error' is a term of art derived from Rule 52(a) of the Federal Rules of Civil Procedure, and applies  when reviewing questions of fact" in the federal system.  Ornelas, 517 U.S. at 694 n.3.  In Virginia, questions of fact are binding on appeal unless "plainly wrong."  Quantum Dev. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991); Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

-

criminal activity."  Ornelas, 517 U.S. at 696 (citation

omitted).  However,

> "[t]here is no 'litmus test' for reasonable
> suspicion.  Each instance of police conduct
> must be judged for reasonableness in light
> of the particular circumstances."  "In order
> to determine what cause is sufficient to
> authorize police to stop a person,
> cognizance must be taken of the 'totality of
> the circumstances--the whole picture.'"

Harmon v. Commonwealth, 15 Va. App. 440, 445, 425 S.E.2d 77, 79

(1992) (citations omitted).

The circumstances established that Perry had reason to

believe that appellant may have been engaged in criminal

activity when he stopped appellant's car.  Perry, who was

trained and experienced in investigating suspicious packages,

saw a man who he believed acted suspiciously in the Federal

Express parking lot as the man nervously watched Perry.  When

Perry checked the ownership of the car, he learned that the car

was registered to someone who Perry knew had engaged in illegal

drug activities.  Furthermore, Perry's suspicions increased when

he viewed the copy of the label from the package that the man

with the ponytail had retrieved.  Perry testified to eight

characteristics of the label that were associated with shipments

of illegal drugs.  Also, the address on the label was in an area

that Perry knew was associated with illegal drug activity in the

past.

-

Moreover, when Perry drove to the address indicated on the label, appellant and the other man Perry had observed in the Federal Express office parking lot exited the apartment and rapidly exited the parking lot. Perry had to "catch up" with appellant and even after Perry activated his blue lights and siren, appellant did not immediately stop. After driving evasively, appellant finally stopped in a dead end parking lot.

"When determining if reasonable suspicion exists, courts must consider that '[t]rained and experienced police officers . . . may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'" <u>Buck v. Commonwealth</u>, 20 Va. App. 298, 302, 456 S.E.2d 534, 536 (1995) (citation omitted). Based on these circumstances and Perry's experience and training, Perry had sufficient reasonable, articulable suspicion to detain appellant to investigate his activity. Therefore, the stop for the purpose of obtaining more information was reasonable and was not unlawful.

## II.  <u>Seizure of the Bag</u>

Appellant contends that Perry did not have probable cause to seize the brown paper bag based on the "plain view" doctrine.

> "[I]n order for a seizure to be permissible under the plain view doctrine, two requirements must be met: '(a) the officer must be lawfully in a position to view and seize the item, [and] (b) it must be immediately apparent to the officer that the

-

item is evidence of a crime, contraband, or otherwise subject to seizure.'"

Conway v. Commonwealth, 12 Va. App. 711, 718, 407 S.E.2d 310, 314 (1991) (en banc) (citation omitted).

Because the stop was not unlawful, Perry was lawfully in a position to view the bag when he stood beside appellant's car. Perry saw that the bag contained indicia of narcotics trafficking, and it contained a copy of the "exact same" Federal Express label Perry had seen earlier that day in connection with his investigation. Thus, it was immediately apparent to Perry, based on his training and experience, that the bag contained items that were evidence of a crime or contraband and that the appellant had lied to him when he said the package was at the apartment. Accordingly, he had probable cause to seize the bag.

III. and IV.  Probable Cause to Arrest and The Search

Appellant contends that the officers lacked probable cause to arrest him. He also argues that, when the officers blocked his car at the end of the dead end road, this was an unlawful seizure. However, Perry initially had suspicions concerning the possibility of appellant's criminal conduct relating to appellant's receipt of the Federal Express package. Then appellant attempted to elude Perry as Perry followed the suspects, and appellant refused to stop his vehicle in response to Perry's blue lights and siren until he was forced to stop at the end of a dead end street. Therefore, Perry had reasonable

-

and articulable suspicion of criminal activity, and the officers' blocking of appellant's vehicle was not an illegal seizure or detention.  See Quigley v. Commonwealth, 14 Va. App. 28, 33, 414 S.E.2d 851, 854 (1992).

Moreover, appellant's attempted flight on foot from the scene provided additional reason to suspect "'an offense ha[d] been committed.'"  Ford v. City of Newport News, 23 Va. App. 137, 143, 474 S.E.2d 848, 851 (1996) (citation omitted). Therefore, the officers had probable cause to arrest appellant. Because appellant was properly arrested, the search incident to the arrest was lawful.  See Illinois v. Lafayette, 462 U.S. 640, 646 (1983).

In addition, Perry testified that he immediately recognized the object in appellant's pants as narcotics, and he knew from his experience and training that drugs are often concealed in that manner.  Therefore, the seizure of the drugs was permissible.  See Welshman v. Commonwealth, 28 Va. App. 20, 35-36, 502 S.E.2d 122, 129 (1998) (en banc).

## V.  Sufficiency of the Evidence

Appellant argues that had the trial court granted any of the issues presented in the motion to suppress, the evidence would not have been sufficient to convict appellant.  However, as stated above, the trial court did not err in denying the motion to suppress the evidence and in admitting the evidence

-

that appellant possessed more than fifty-six grams of methamphetamine.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted). From the evidence of appellant's possession of the drugs, combined with Perry's testimony concerning the packaging evidence and Perry's testimony that the quantity of recovered methamphetamine was inconsistent with personal use, the trial court could conclude beyond a reasonable doubt that appellant committed the charged offense. See White v. Commonwealth, 25 Va. App. 662, 668, 492 S.E.2d 451, 454 (1997) (en banc).

For these reasons, we affirm the decision of the trial court.

Affirmed.

-