COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Powell and Senior Judge Coleman
Argued at Richmond, Virginia, and by teleconference


COREY TAYVON SMITH

                                                          OPINION BY
v.        Record No. 0892-08-2                    JUDGE LARRY G. ELDER
                                                          OCTOBER 6, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                             Richard D. Taylor, Jr., Judge

            Jessica M. Bulos, Assistant Appellate Defender (Office of the
            Appellate Defender, on briefs), for appellant.

            Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
            Attorney General; William C. Mims, Attorney General, on briefs),
            for appellee.


        Corey Tayvon Smith (appellant) appeals from his conviction for possession of a firearm

by a convicted felon, rendered on his conditional guilty plea.  On appeal, he contends the trial

court erroneously denied his motion to suppress the fruits of a search of his person following a

traffic stop of the car in which he was a passenger.  We hold the evidence, viewed in the light

most favorable to the Commonwealth, fails to support the trial court's ruling.  Thus, we reverse

the challenged conviction and remand for further proceedings consistent with this opinion.

                                            I.

                                     BACKGROUND

        On October 18, 2006, Richmond Police Detective Timothy Neville obtained a warrant for

appellant's arrest for possession of a firearm by a convicted felon, based on an incident that had

occurred that day.  Richmond Police Officer Roger Harris arrested appellant on that warrant.

Officer Harris then entered information about appellant's arrest into the department's

computerized PISTOL database, after which PISTOL included the alert "probably armed" in reference to appellant.[1] PISTOL is a computerized system that is maintained by the police department and is accessible to officers in the field through the computers in their cars. "[O]fficers who come in contact with people who are probably armed narcotics sellers/users" may have such information entered into the PISTOL database so that, during a subsequent encounter with any such person, other officers in the field may consult the database for "officer safety" purposes.

On June 21, 2007, appellant entered an Alford plea to the charge of possessing a firearm after having been convicted of a felony, based on the October 18, 2006 offense for which Officer Harris had entered the information in PISTOL. Appellant also entered an Alford plea to a charge of possession of cocaine with an intent to distribute, which had an offense date of March 13, 2007.[2] The trial court sentenced appellant to ten years for the cocaine offense and five years for the firearm offense but suspended all but three months of that time on certain conditions including supervised probation.

At an unspecified time on September 18, 2007,[3] eleven months after the offense date for appellant's firearm possession conviction and six months after the offense date for appellant's possession-with-intent-to-distribute conviction, two off-duty police officers, Hedman and Moore, were working at Hillside Court in south Richmond, a Richmond Redevelopment and Housing Authority (RRHA) property. Their purpose was to "[e]nforce trespassing [restrictions] in

---

[1] The record does not make clear whether Officer Harris chose to include the alert "probably armed" or whether it was generated by PISTOL automatically when Officer Harris entered the information about the firearm arrest.

[2] The record contains no information about the events that led to this drug charge.

[3] The trial record indicates that the warrant for appellant's arrest was issued at 10:27 p.m., but it does not indicate when the officers first stopped the vehicle in which appellant was riding.

Hillside." While on routine patrol there, the officers observed a vehicle with a rear brake light out, and they activated their emergency equipment and effected a traffic stop of the vehicle. As part of their duty to prevent trespassing, they obtained identification from the car's two occupants, the driver and appellant, who was "the rear seat passenger" and was sitting "behind the driver's seat." The officers determined neither had any outstanding warrants. However, when Officer Hedman checked the interdepartmental PISTOL system, appellant's name "came back with an alert, '*probably armed and a narcotics seller/user.*'" "[O]nce [the officers] saw the alert for '*probably armed,*' they immediately addressed that, . . . for officer safety . . . ."

Officer Moore asked appellant to step out of the vehicle, and appellant complied. Officer Moore then asked appellant "if he had any weapons on him," and appellant said he did not. Officer Moore responded, "I'm going to pat you [down] and make sure," to which appellant responded, "[Y]ou're not going to search me." When Officer Moore began patting appellant down, he felt a gun in appellant's left front pocket[4] and asked appellant about it. Appellant first failed to respond and then said the item was a lighter. Officer Moore then pulled a two-shot Derringer from appellant's pocket. At that time, Officer Hedman had not yet determined whether he would issue the driver a summons for the nonfunctioning brake light and the traffic stop had not yet been concluded.

Appellant moved to suppress the firearm, arguing information that he had possessed a firearm eleven months earlier on October 18, 2006, was insufficient to provide reasonable suspicion to believe he was armed and dangerous at the time of the traffic stop on September 18, 2007. The Commonwealth countered that the officers "should be able to rely on" the information in "[their] own system . . . when they are out in the field doing their work." The trial

---

[4] Officer Moore did not testify, but appellant did not object to the admission of this evidence through the testimony of Officer Hedman.

court ruled that, given "the officer receiving information with regards to the fact that this person had been known to carry firearms," the officer "did not act impermissibly in conducting a pat down . . . for purposes of the officer's safety."

After appellant entered a conditional plea of guilty to the offense and was sentenced, he noted this appeal. Following briefing and oral argument in this Court, we ordered counsel for both parties to submit supplemental briefs addressing "the effect, if any," of the decisions in Herring v. United States, 555 U.S. ___, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009), and Montejo v. Louisiana, 556 U.S. ___, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009), on the question before the Court on appeal. Following the filing of those supplemental briefs, both counsel also presented supplemental oral argument.

II.

ANALYSIS

On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth. Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992). "[W]e are bound by the trial court's findings of historical fact[, whether express or implicit,] unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). We review *de novo* the trial court's application of defined legal standards such as whether probable cause or reasonable suspicion supported a seizure or search. Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920 (1996).

Under settled constitutional principles, a law enforcement officer may conduct a Terry investigatory stop of an individual if the officer "reasonably suspects that the person . . . is committing or has committed a criminal offense." Arizona v. Johnson, 555 U.S. ___, ___, 129

- 4 -

S. Ct. 781, 784, 172 L. Ed. 2d 694, 700 (2009) (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Additionally, once the officer has conducted a valid stop, he may frisk the person for weapons if he "reasonably suspect[s] that the person stopped is armed and dangerous." Id. In cases in which the stop is based on reasonable suspicion of a contemporaneous crime, the nature of the crime suspected may be sufficient to support a concomitant frisk for weapons. See, e.g., Terry, 392 U.S. at 28, 88 S. Ct. at 1883, 20 L. Ed. 2d at 910 (noting the suspect's actions "were consistent with [the officer's] hypothesis that these men were contemplating a daylight robbery—which, it is reasonable to assume, would be likely to involve the use of weapons"); Jones v. Commonwealth, 272 Va. 692, 701 n.3, 636 S.E.2d 403, 407 n.3 (2006) ("'[I] t is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction.'" (quoting United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir. 2005))). In other cases, the basis for the stop will add little or nothing to the totality-of-the-circumstances analysis required to support a weapons frisk, and more will be required to provide reasonable suspicion to believe the suspect may be armed and dangerous. See McCain v. Commonwealth, 275 Va. 546, 554, 659 S.E.2d 512, 517 (2008) ("An officer may not automatically search a driver or his passengers pursuant to the issuance of a traffic citation . . . , but he may frisk the driver and passengers for weapons if he develops reasonable suspicion during the traffic . . . stop to believe the particular person to be frisked is armed and dangerous."); Harris v. Commonwealth, 262 Va. 407, 417, 551 S.E.2d 606, 611 (2001) (holding that trespassing is "an offense not generally associated with the wrongdoer being armed"); see also 4 Wayne R. LaFave, Search and Seizure § 9.6(a), at 625-27 (4th ed. 2003) (discussing the types of offenses various jurisdictions have held are likely and unlikely to give rise to reasonable suspicion for a weapons frisk).

The United States Supreme Court has concluded that when a law enforcement officer conducts a Terry stop of a vehicle to investigate a traffic violation, the Fourth Amendment permits the officer to detain not only the driver but also the passengers for the duration of the stop, as long as the duration of the stop is reasonable. Brendlin v. California, 551 U.S. 249, 255-58, 127 S. Ct. 2400, 2406-07, 168 L. Ed. 2d 132, 138-40 (2007). Most recently, in Johnson, 555 U.S. ___, 129 S. Ct. 781, 172 L. Ed. 2d 694, the Court has clarified the application of Terry's stop-and-frisk principles to traffic stops, holding as follows:

> [I]n a traffic-stop setting, the first Terry condition – a lawful investigatory stop – is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a pat down of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.[5]

Id. at ___, 129 S. Ct. at 784, 172 L. Ed. 2d at 700 (footnote added).

___

[5] The Commonwealth contends on brief that the Court also held in Johnson "there were reasonable grounds to suspect the defendant was armed and dangerous." As factual support for this conclusion, the Commonwealth notes the defendant in Johnson "told police he had spent time in prison for burglary and had been out about a year, wore gang-related garb, mentioned he was from a city known to police as a home base for the Crips gang, and had a [portable police] scanner in his pocket." The United States Supreme Court set out these facts in reciting the procedural history of the case and later, in its analysis, stated that the officer "surely was not constitutionally required to give Johnson an opportunity to depart the scene after he exited the vehicle without first ensuring that, in doing so, she was not permitting a dangerous person to get behind her." 555 U.S. at ___, 129 S. Ct. at 788, 172 L. Ed. 2d at 704-05. In a footnote following that sentence, however, the Court observed (a) that the Arizona Court of Appeals had assumed without deciding the officer had reasonable suspicion to believe Johnson was armed and dangerous and (b) that the United States Supreme Court's decision in Johnson "[did] not foreclose the appeals court's consideration of that issue on remand." Id. at ___ n.2, 129 S. Ct. at 788 n.2, 172 L. Ed. 2d at 705 n.2. Construed together, these statements compel the conclusion that the Court did not decide whether the facts in that case provided reasonable suspicion to believe the defendant was armed and dangerous. Although holding the Constitution did not require the officer to allow Johnson "to depart the scene without ensuring . . . she was not permitting a dangerous person to get behind her," id. at ___, 129 S. Ct. at 788, 172 L. Ed. 2d at

The "authority" to frisk for weapons during a stop must be "narrowly drawn." Terry, 392

U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909.

> The officer need not be absolutely certain that the individual is
> armed; the issue is whether a reasonably prudent man in the
> circumstances would be warranted in the belief that his safety or
> that of others was in danger. And in determining whether the
> officer acted reasonably in such circumstances, due weight must be
> given, not to his inchoate and unparticularized suspicion or
> "hunch," but to the specific reasonable inferences which he is
> entitled to draw from the facts in light of his experience.

Id. (citations and footnote omitted); see United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct.

744, 750-51, 151 L. Ed. 2d 740, 749-50 (2002). In assessing the totality of the circumstances

supporting reasonable suspicion,

> *the police officer must be able to point to specific and articulable*
> *facts which, taken together with rational inferences from those*
> *facts, reasonably warrant that intrusion. . . .* Anything less would
> invite intrusions upon constitutionally guaranteed rights based on
> nothing more substantial than inarticulate hunches, a result [the
> United States Supreme] Court has consistently refused to sanction.

Terry, 392 U.S. at 21-22, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906 (emphasis added); see Arvizu,

534 U.S. at 273, 122 S. Ct. at 750, 151 L. Ed. 2d at 749 (reiterating that the officer must be able

to articulate the "'particularized and objective basis'" which he believes supports the frisk

(quoting United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629

(1981))).

The officer's reasonable suspicion must apply to the *particular* individual to be frisked,

e.g. Michigan v. Summers, 452 U.S. 692, 699 n.9, 101 S. Ct. 2587, 2592 n.9, 69 L. Ed. 2d 340,

347 n.9 (1981) (citing Ybarra v. Illinois, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979)),

and the officer must reasonably suspect the person is "armed and *presently* dangerous to the

---

704-05, the Supreme Court did not decide whether the facts established a reasonable, articulable
suspicion to believe defendant Johnson was such a person.

officer or to others," <u>Terry</u>, 392 U.S. at 24, 88 S. Ct. at 1881, 20 L. Ed. 2d at 908 (emphasis added). Circumstances relevant in this analysis include the characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, whether a bulge in his clothing suggests the presence of a weapon, the character of the offense under suspicion, the suspect's criminal history, if known, and the unique perspective of a police officer trained and experienced in the detection of crime. See <u>McCain</u>, 275 Va. at 554, 659 S.E.2d at 517; <u>Troncoso v. Commonwealth</u>, 12 Va. App. 942, 945, 947, 407 S.E.2d 349, 350-51 (1991) (holding the sighting of a large bulge under the clothing of a person stopped for a traffic infraction, coupled with nervousness, fidgeting, perspiring, and furtive efforts to cover the bulge, provided reasonable suspicion for a weapons frisk); <u>State v. Valentine</u>, 636 A.2d 505, 510-11 (N.J. 1994) ("[A] police officer's knowledge of a suspect's criminal history, especially where that history involves weapons offenses, is a relevant factor in judging the reasonableness of a <u>Terry</u> frisk.").

In sum, "'[e]ven in high crime areas, where the possibility that any given individual is armed is significant, <u>Terry</u> requires reasonable, *individualized[, articulated]* suspicion [that the individual may be *presently* armed and dangerous] before a frisk for weapons can be conducted.'" <u>McCain</u>, 275 Va. at 554, 659 S.E.2d at 517 (quoting <u>Maryland v. Buie</u>, 494 U.S. 325, 334 n.2, 110 S. Ct. 1093, 1098 n.2, 108 L. Ed. 2d 276, 286 n.2 (1990)) (emphasis added); see <u>Terry</u>, 392 U.S. at 24, 88 S. Ct. at 1881, 20 L. Ed. 2d at 908.

Here, the record failed to demonstrate Officers Hedman and Moore had reasonable suspicion for the frisk based on personal knowledge and contemporaneous observations, and the Commonwealth does not contend otherwise. The factual basis for the stop was an equipment violation—a nonfunctioning brake light—committed by the vehicle's driver. The record contains no evidence that the stop occurred late at night or even after dark. It also contains no

evidence concerning the character of the neighborhood, beyond the fact that it was an RRHA-owned property that sought to avoid problems with trespassers, as demonstrated by the employment of off-duty police officers to enforce trespassing restrictions.[6] Cf. Harris, 262 Va. at 417, 551 S.E.2d at 611 (in assessing the reasonableness of a stop and frisk on the premises of a public housing development where the evidence established a "long-term" "drug elimination program" was in place, observing this evidence did not indicate whether the program had been successful or whether the drug problem persisted). Although the officers also wished to investigate whether appellant and the driver might be trespassing, trespassing is a minor offense, and the record neither contains evidence nor supports an inference indicating that trespassers in general, or trespassers on this property in particular, were likely to be armed. See id. Further, neither appellant nor the driver had any outstanding warrants, and the record gives no indication the officers saw any signs of weapons, drugs or other contraband on the car's occupants or in the vehicle. It also gives no indication that they observed appellant or the driver engage in any furtive behavior tending to indicate the presence of a weapon or some sort of contraband or other criminal activity. Finally, appellant was cooperative until he declined Officer Moore's request to frisk him and responded negatively to Officer Moore's statement that he would conduct a frisk with or without appellant's consent.

---

[6] The Commonwealth, on brief, cites to an unpublished decision of this Court and a published decision of a federal district court in support of the assertion that the neighborhood at issue here "is a high-crime area." However, the evidence offered in those cases is not evidence in the present case. Further, those cases involved events that occurred in 2004 and 2005, see Swann v. City of Richmond, 498 F. Supp. 2d 847 (E.D. Va. 2007); Taylor v. Commonwealth, No. 0159-06-2 (Va. Ct. App. Feb. 20, 2007), more than two years prior to the events in appellant's case, and would not support a finding regarding the character of the neighborhood at the time of the stop of appellant on September 18, 2007. The Commonwealth conceded in supplemental oral argument that the record in this case is devoid of evidence that Hillside Court was "a high crime area" on the date at issue.

Thus, we examine whether sufficient additional information existed upon which the officers were entitled to rely to provide reasonable suspicion for a weapons frisk. We conclude the holding of United States v. Hensley, 469 U.S. 221, 229-33, 105 S. Ct. 675, 681-82, 83 L. Ed. 2d 604, 612-15 (1985), permits imputation of the knowledge of the officers who *entered* the information in the police department's PISTOL system to Officers Hedman and Moore for purposes of assessing whether they had reasonable suspicion for the frisk. In Hensley, the Court held that where officers issue a flyer indicating they have reasonable suspicion to stop a suspect, and other officers, who lack sufficient personal knowledge to provide reasonable suspicion, "objective[ly] rel[y]" on the flyer to make a stop, the validity of the stop depends upon whether the officers issuing the flyer in fact had the requisite reasonable suspicion. Id. at 232, 105 S. Ct. at 682, 83 L. Ed. 2d at 614; see Reed v. Commonwealth, 36 Va. App. 260, 266, 549 S.E.2d 616, 619 (2001) (applying Hensley to hold the arresting officer "was entitled to rely on information communicated to him by his fellow law enforcement officers"); White v. Commonwealth, 24 Va. App. 234, 240, 481 S.E.2d 486, 489 (approving aggregation of police information under "collective knowledge" principles), reaching the same result on other grounds, 25 Va. App. 662, 492 S.E.2d 451 (1997) (en banc).

We hold the imputation-of-knowledge principles used in Hensley to determine whether reasonable suspicion existed *for a stop* also apply to determining whether an individual, already being detained in the course of a legitimate stop, may be subjected to *a weapons frisk*. We also hold the PISTOL system's alert listing appellant as "probably armed," implying justification for a weapons frisk, is the computer equivalent of the paper flyer in Hensley. See LaFave, supra, § 9.5(i), at n.510 (4th ed. Supp. 2008-2009) ("Hensley no doubt applies to transferring of information by computer, as well, but in such circumstances the officer must act reasonably as to his interpretation of the [information] received via computer."); see also Duckett v. United

- 10 -

States, 886 A.2d 548, 550-52 (D.C. 2005) (implicitly approving an officer's use of vehicle registration information obtained from two different computerized databases—the national "NCIC" database including, *inter alia*, information about stolen vehicles, and the local police database, "WALES," containing vehicle registration data updated on a weekly basis—but holding the officer could not rely blindly on the results of a search of those databases indicating they found "NO RECORD" of the specific vehicle information entered for purposes of establishing reasonable suspicion for a traffic stop). Thus, for purposes of determining whether a violation of the Fourth Amendment occurred,[7] Officers Hedman and Moore, like the officers in Hensley, could rise no higher than the facts and circumstances known to the officers who entered the information into the PISTOL system. Here, like in Hensley, we hold the information proved to be within the knowledge of the officers performing the PISTOL data entry—coupled with any personal knowledge Officers Hedman and Moore acquired during the course of the September 18, 2007 traffic stop—was insufficient to provide reasonable suspicion for the frisk.

The information Officer Hedman obtained about appellant from PISTOL was that appellant was "*probably armed and a narcotics seller/user*." The only information in the record proved to be known by Officer Harris, the person who entered the information leading to the alert, "probably armed," was that appellant had been arrested on a warrant for possession of a firearm by a convicted felon, based on an act of possession that had occurred *eleven* months prior to the September 18, 2007 traffic stop. Although the Commonwealth offered evidence *at trial* that appellant was convicted for the firearm offense after the information was entered into PISTOL and before the encounter at issue in this appeal,[8] the record contains no indication that

---

[7] We consider *infra* at pages 15-21 whether the exclusionary rule or its good faith exception apply.

[8] Appellant entered an Alford plea.

- 11 -

the fact of appellant's conviction for the firearm offense was known to the data entry officer or to the detective who observed the offense and obtained the arrest warrant. It also contains no indication that appellant's *conviction* for the firearm offense had any impact on the alert that had already been entered in PISTOL. Thus, we consider only the information known to the data entry officer at the time he entered the information into the database—that appellant had been arrested on the warrant for the firearm offense, which had occurred eleven months prior to the traffic stop at issue here.

As to the drug-related portion of the alert, Officers Hedman and Moore did not articulate any reliance on it in determining whether to frisk appellant. Nevertheless, we assume Officer Moore considered this part of the alert, as well. We assume further that this part of the alert was based on appellant's act of possessing cocaine with an intent to distribute six months prior to the instant firearm offense and for which appellant was convicted prior to his arrest for the instant firearm offense. We note, however, that the record fails to indicate who entered the information about the drug offense or when. In the absence of any such evidence, we can infer at most only that this information was entered into PISTOL in the same way as the information regarding the previous incident of firearm possession in October 2006—after appellant's arrest for the drug offense but before his conviction.

In sum, the most this record establishes the data entry officers knew was that appellant had been (1) *arrested* on a warrant for possession of a firearm by a convicted felon for an act of possession alleged[9] to have occurred *eleven months prior* to the instant offense and (2) *arrested* for possessing cocaine with an intent to distribute for an act alleged to have occurred *six months prior* to the instant offense. The record contains no indication appellant was in possession of a

---

[9] A magistrate had found probable cause to issue the warrant but no conviction had yet been rendered on the charge.

firearm on the date of the cocaine possession offense in March 2007 or at any other time after the date on which he was alleged to have committed the previous firearm possession offense in October 2006.

Thus, the issue is whether police who encounter a passenger in the course of a routine traffic stop have reasonable suspicion to believe he may be armed and dangerous when they learn he has no warrants outstanding but that he was previously arrested on a warrant for possession of a firearm by a convicted felon based on an act of possession that occurred *eleven months earlier* and previously arrested for possessing cocaine with an intent to distribute based on an act of possession that occurred *six months earlier*. We hold that, in the absence of some *contemporaneous* indication that the individual might be carrying a weapon, these facts do not provide reasonable suspicion to believe he may be *presently* armed and dangerous. Absent additional circumstances, "an officer's knowledge of a suspect's criminal history alone is not sufficient to justify the initial stop of a suspect" or, absent special circumstances such as a lengthy or closely contemporaneous criminal history, "[sufficient] to justify a frisk of a suspect once stopped . . . ." Valentine, 636 A.2d at 510-11 (involving prior incident of firearm possession); United States v. Williams, 962 F.2d 1218, 1223 (6th Cir. 1992) (noting evidence that a passenger had acted as a drug courier and often carried a weapon "*was at le[a]st ten months old" and thus "was not recent*," but that contemporaneous evidence in the stopped vehicle—white powder suspected to be cocaine and an empty 9 mm. magazine for a semi-automatic handgun—coupled with the passenger's "vehement refusal to allow [the officer] to touch the purse" provided the requisite reasonable suspicion to "frisk" the purse (emphasis added)). Prior involvement with guns and drugs is an appropriate factor for consideration in the totality-of-the-circumstances analysis but is insufficient, standing alone, to provide reasonable suspicion for a weapons frisk. An adequate temporal or other connection must be shown before

- 13 -

reasonable suspicion may be found to exist. See Williams, 962 F.2d at 1223; United States v. Stachowiak, 521 F.3d 852, 856-57 (8th Cir. 2008) (where police stopped the suspect's car after observing a traffic infraction and had received information from a reliable confidential informant two weeks earlier that he had seen appellant with a firearm during the previous month and knew appellant had been engaging in the armed sales of narcotics regularly for at least six months prior to that time, the informant's information was not too stale and, coupled with evidence that the suspect made a furtive gesture at the time of the stop, provided reasonable suspicion for a weapons frisk); cf. Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000) ("[A] warrant will be tested for 'staleness' by considering whether the facts alleged in the warrant provided probable cause to believe, *at the time the search actually was conducted*, that the search conducted pursuant to the warrant would lead to the discovery of evidence of criminal activity." (emphasis added)); Sowers v. Commonwealth, 49 Va. App. 588, 601, 643 S.E.2d 506, 512 (2007) (noting "[p]robable cause [for the issuance of a warrant] may be diminished by the passage of time between when the supporting facts occurred and when the police issue the affidavit"). Unless the evidence establishes an additional factual basis for believing the suspect may be *presently* armed and dangerous—evidence in combination which may include a lengthy criminal history, habitual involvement with firearms, involvement with drug distribution, furtive gestures, a suspicious bulge, or something similar, none of which were present here—the officer lacks reasonable suspicion for a frisk.

Thus, when Officers Hedman and Moore encountered appellant during the course of a routine traffic stop on an RRHA property, they had no more than an inchoate suspicion or hunch that appellant might be armed. Here, like in McCain,

> such a hunch does not rise to the level of reasonable suspicion.
> The officers' interaction with [appellant] during the traffic stop in
> no way supported this hunch, because the officers did not observe
> or notice any [weapons,] drugs, odor of drugs, or drug

- 14 -

paraphernalia in the vehicle. Further, the officers did not notice any physical or mental impairment that would indicate drug use by [appellant], and there were no physical or other characteristics observed by the officers[, such as nervousness, furtive gestures, a bulge in appellant's clothing, or a refusal to remove his hands from his pockets,] that indicated [appellant] might be armed and dangerous. . . . [Appellant] identified himself when requested, did not make any furtive movements, and cooperated fully with the police officers until [Officer Moore] asked permission to do a pat-down search.

McCain, 275 Va. at 555, 659 S.E.2d at 517. Although appellant, unlike McCain, was known to the officers to have had a prior arrest on a warrant for possessing a firearm and a separate prior arrest for possessing cocaine with an intent to distribute, the acts leading to these convictions occurred, respectively, eleven and six months earlier and provided no more than a hunch that appellant was engaged in any related illegal activities at the time of the traffic stop. This evidence, viewed in its totality, failed to provide reasonable suspicion to believe appellant may have been armed and dangerous. If we were to reach a contrary conclusion in this case, it would logically follow that an individual arrested for illegally possessing a firearm and possessing drugs with an intent to distribute would forever thereafter be subject to a weapons frisk if stopped for a minor traffic infraction, regardless of whether police had any contemporaneous evidence of ongoing involvement with illegal drugs or weapons.

We hold further that, as appellant avers, the recent decision in Herring, 555 U.S. ___, 129 S. Ct. 695, 172 L. Ed. 2d 496, does not provide an alternate ground for affirming the trial court's ruling in this case.[10] In Herring, a majority of the Court, by a vote of five to four, intimated that

---

[10] Based on the recent decision in Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265, petition for reh'g filed, No. 080775 (July 6, 2009), appellant contends in his supplemental brief that any consideration of Herring's ruling concerning application of the exclusionary rule's good faith exception as an alternative basis for affirming is procedurally "questionable." In Whitehead, the Virginia Supreme Court ruled that "[c]ases in which the party seeking affirmance failed to present the argument in the trial court, such that the trial court did not have an opportunity to rule on the argument, are not 'proper cases' for the application of the doctrine [permitting affirmance on alternate grounds]." Id. at 114, 677 S.E.2d at 270. As appellant

appropriate application of the exclusionary rule might be more limited than previously held. Herring involved negligent record-keeping regarding the existence of an outstanding warrant in one jurisdiction, which led to an arrest without probable cause in another jurisdiction. Id. at ___, 129 S. Ct. at 698-99, 172 L. Ed. 2d at 502-03 ("accept[ing] the parties' assumption that there was a Fourth Amendment violation"). In holding the good faith exception to the exclusionary rule applied and that the fruits of the arrest were admissible, the Supreme Court relied on its 1984 decision in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), in which it first recognized a good faith exception. Herring, 555 U.S. at ___, 129 S. Ct. at 699-702, 172 L. Ed. 2d at 503-07. The Court cited Leon as holding that "[w]hen police act *under a warrant* that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted [in 'good faith'—] 'in objectively reasonable reliance' on the subsequently invalidated search warrant." Id. at ___, 129 S. Ct. at 701, 172 L. Ed. 2d at 505 (quoting Leon, 468 U.S. at 922 & n.23, 104 S. Ct. at 3420 & n.23, 82 L. Ed. 2d at 698 & n.23) (emphasis added). It noted its subsequent extension of the good faith exception to "warrantless

---

conceded at supplemental oral argument, however, Whitehead is distinguishable from this case because it involved factual issues on which the trial court had not made findings. We conclude Whitehead's rationale prohibits only arguments addressing discrete elements of a crime or separate doctrines of adjudication that require additional fact-finding. See Brown v. Commonwealth, 270 Va. 414, 421 n.2, 620 S.E.2d 760, 764 n.2 (2005) (refusing to apply the doctrine of inevitable discovery as an alternative means of overcoming the lack of probable cause); Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963) (refusing to apply the right-result-wrong-reason doctrine because "[t]o do so, we would have to do more than just give a different but correct reason for affirming" and would instead have to "recognize and uphold a different defense . . . that is not before us on this appeal"), cited with approval in Whitehead, 278 Va. at 114-15, 677 S.E.2d at 270; see also Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992) (discussing the parameters of the rule as set out in various Virginia Supreme Court cases). In this case, the prosecutor argued in the trial court that the "police [department]'s own system" was "inherently [re]liable[e]" and that "they should be able to rely on [it]," which we hold was sufficient to place the issue of good faith before the trial court. Further, no additional factual findings are required to permit us to conclude that the exclusionary rule's good faith exception is inapplicable in this case. Thus, we conclude Whitehead does not prevent us from considering this issue.

- 16 -

administrative searches performed in good-faith reliance on a statute later declared unconstitutional," to a warrant that was "invalid because a judge forgot to make 'clerical corrections'" to it, and "to police who reasonably relied on mistaken information in *a court's database* that an arrest warrant was outstanding." Id. at ___, 129 S. Ct. at 698, 701, 172 L. Ed. 2d at 502, 505-06 (emphasis added). It concluded that an error about the existence of an outstanding warrant in *a police database in a different county* also was subject to the good faith exception. Id. In reaching this conclusion, the Court discussed the purpose and applicability of the exclusionary rule, holding as follows:

> Our cases establish that . . . suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct.

> \*      \*      \*      \*      \*      \*      \*

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.

Id. at ___, 129 S. Ct. at 698-702, 172 L. Ed. 2d at 502-07. The Court held the error in Herring—the faulty record-keeping about whether a warrant remained outstanding in one county, which led to an erroneous arrest in a second county—"was the result of isolated negligence attenuated from the arrest" and that, "in these circumstances[,] the jury should not be barred from considering all the evidence." Id. at ___, 129 S. Ct. at 698, 172 L. Ed. 2d at 502; see also Logan v. Commonwealth, 53 Va. App. 520, 524-26, 673 S.E.2d 496, 498-99 (2009) (applying Herring's exclusionary rule and good faith discussion in the unique context of probation violation proceedings, in which the exclusionary rule applies "if the defendant proves 'bad faith on the part of the police'" (quoting Anderson v. Commonwealth, 251 Va. 437, 440, 470 S.E.2d 862, 863 (1996))). The Court specifically noted that "[t]he Coffee County officers did nothing

- 17 -

improper.  Indeed, the error [in the Dale County database] was noticed so quickly because Coffee County requested a faxed confirmation of the warrant."  Herring, 555 U.S. at ___, 129 S. Ct. at 700, 172 L. Ed. 2d at 504.

Despite the Court's language in Herring intimating a narrow application of the exclusionary rule, it gave no indication that it sanctioned an extension of the good faith exception beyond the context of Leon, which involved a search conducted pursuant to a subsequently invalidated warrant, or Herring, which involved the erroneous belief, based on the attenuated negligence of police in a different county, that an arrest warrant remained outstanding, other than as previously applied in the unique context of administrative searches performed in good faith reliance on a statute later declared unconstitutional.  Herring, 555 U.S. at ___, 129 S. Ct. at 701, 172 L. Ed. 2d at 505-06 (citing Illinois v. Krull, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 34 (1987)).  The Court's rulings in two other cases—Hensley and Arizona v. Gant, 556 U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009)—support the conclusion that the Court did not intend in Herring to extend the good faith exception to admit the fruits of a warrantless frisk or search based on the searching police officer's honest but erroneous belief about what the Fourth Amendment requires to establish the necessary reasonable suspicion or probable cause.

In Hensley, decided in 1985 just six months after Leon, police made a Terry stop which the Court held violated the Fourth Amendment.  469 U.S. at 229-30, 105 S. Ct. at 681, 83 L. Ed. 2d at 612-13.  The decision in Hensley specifically mentioned that good faith might insulate the arresting officers from *civil* suit, but it gave no indication whatsoever that good faith principles might apply to assessing the Fourth Amendment validity of a *warrantless* seizure for purposes of a *criminal* trial, and it ruled the failure to suppress the evidence was error.  Id. at 232, 105 S. Ct. at 682, 83 L. Ed. 2d at 614.

Similarly, in Gant, decided in April 2009 just three months after Herring, the Court addressed another case involving wholly warrantless Fourth Amendment activity and held the search at issue was unconstitutional. In doing so, the Court noted that because a view of the law contrary to what the Court held in Gant "has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding." 556 U.S. at ___ n.11, 129 S. Ct. at 1723 n.11, 173 L. Ed. 2d at 500 n.11. Nevertheless, just like in Hensley, neither the majority nor the dissent in Gant made any mention of good faith principles in reference to the criminal trial suppression issue, and the majority affirmed the lower court's exclusion of the evidence. Id. at ___ & n.11, 129 S. Ct. at 1723-24 & n.11, 173 L. Ed. 2d at 501 & n.11; see Guzman v. City of Chicago, 535 F.3d 393, 399 (7th Cir. 2009) (citing Gant as authority that the Court's decision in Herring does not mean "the exclusionary rule is necessarily on life support"). In sum, the Court held implicitly that although the officers conducting the search relied in good faith on existing case law, this reliance did not excuse the Fourth Amendment violation, and application of the exclusionary rule was justified.

From these rulings, we conclude that, despite the breadth of some of the Court's language in Herring, it did not narrow the exclusionary rule beyond the bounds previously defined and that the good faith exception does not apply to a police officer's honest but erroneous legal conclusion that a particular set of facts provides him with the necessary reasonable suspicion or probable cause for a seizure or search. In deciding Herring, the Court merely discussed *the rationale* for the exclusionary rule to determine whether the officers' mistake about the existence of a warrant fell more appropriately under general exclusionary rule principles or, instead, under the rule's good faith exception as applied to some searches made pursuant to defective warrants. See also Montejo, 555 U.S. at __, ___, 129 S. Ct. at 2082, 2090, 173 L. Ed. 2d at 960, 968 (discussing the rationale for the exclusionary rule as set out in Herring and concluding that it did

- 19 -

not justify retention of "the rule . . . in <u>Michigan v. Jackson</u>, 475 U.S. 625, 106 S. Ct. 1401, 89 L. Ed. 2d 631 (1986), forbidding police to initiate interrogation of a criminal defendant once he has requested counsel at an arraignment or similar proceeding" because the costs of the rule outweighed its benefits in light of the related protections provided "[u]nder the <u>Miranda</u>-<u>Edwards</u>-<u>Minnick</u> line of cases").

Further, the general exclusionary rule principles set out in <u>Herring</u> support application of the rule in this case because the officers' error in frisking appellant did not result from "isolated negligence attenuated from the arrest," i.e., faulty record-keeping in a different jurisdiction. <u>Herring</u>, 555 U.S. at ___, 129 S. Ct. at 698, 699, 172 L. Ed. 2d at 502, 503.  Instead, it was caused by conduct which occurred within a single police department and which was "sufficiently deliberate that exclusion can meaningfully deter it" and "sufficiently culpable that such deterrence is worth the price paid by the justice system."  <u>Id.</u> at ___, 129 S. Ct. at 702, 172 L. Ed. 2d at 507; <u>see</u> <u>United States v. Green</u>, No. 1:08-CR-0041, 2009 U.S. Dist. LEXIS 6860, at *28-29 (M.D. Pa. Jan. 30, 2009) (noting the Supreme Court "clearly restricted the reach of <u>Herring</u>'s limitation on the exclusionary rule to police misconduct that is 'attenuated' from the arrest" and holding that the conduct of the officers conducting the pat down of Green without reasonable suspicion, although "nowhere near as culpable as that of <u>Mapp</u> [v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961)]," in which the Court first applied the exclusionary rule to the states, was conduct "that may still be deterred through application of the exclusionary rule").

Here, nothing in the officers' contemporaneous dealings with appellant, a passenger, in the course of a routine traffic stop led them to believe he personally was committing or was about to commit a crime or that he was armed and dangerous, and a warrant check revealed no outstanding warrants for appellant.  Nevertheless, the officers on the scene relied on nonspecific

information in their PISTOL database indicating that appellant was "probably armed and a narcotics seller/user." The record contains nothing showing the entry indicated the source of the information, any particular event upon which the information was based, or when any such event had occurred. Absent some contemporaneous corroboration, this information indicated, at most, that the officers should be especially cautious in their dealings with appellant; without more contextual information, no reasonable officer could have concluded under the Fourth Amendment that these facts supported a weapons frisk.

When we impute to Officers Hedman and Moore the information known to the data entry officers, we reach the same result. The officers who entered the data into PISTOL were not shown to have done so based on any more information than that appellant had been *arrested* for possession of a firearm by a convicted felon for an incident that had occurred eleven months earlier and possession of cocaine with an intent to distribute for an incident that had occurred six months earlier. Absent any *contemporaneous* indication that appellant possessed a weapon or drugs, this stale arrest information was similarly insufficient to permit a reasonable officer to conclude a weapons frisk was justified.

Under either informational scenario, the conduct of the officers was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at ___, 129 S. Ct. at 702, 172 L. Ed. 2d at 507. To hold that an officer who receives vague information like "probably armed and a narcotics seller/user" from the PISTOL system is entitled to rely unconditionally on that information to provide reasonable suspicion for a stop or frisk would encourage negligent behavior or worse on the part of those designing the database system, those entering the data, or those relying on it to provide reasonable suspicion or probable cause for police action.

III.

For these reasons, we hold the trial court erroneously denied appellant's motion to suppress the fruits of a search of his person following a traffic stop of the car in which he was a passenger. Thus, we reverse the challenged conviction and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>