COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Humphreys and Senior Judge Coleman
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.        Record No. 0490-10-1

TYRONE O. JOHNSON, JR., S/K/A
  TYRONE ORNEALL JOHNSON, JR.

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
JULY 27, 2010

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Stephanie S. Miller (Office of the Public Defender, on brief), for
appellee.

Tyrone O. Johnson, Jr. (defendant), stands indicted for possession of a firearm by a

convicted felon.  Pursuant to Code § 19.2-398, the Commonwealth appeals a pretrial ruling

granting defendant's motion to suppress all evidence recovered during a search of his

automobile.  In light of Arizona v. Gant, 556 U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485

(2009), the trial court held the search violated the Fourth Amendment and that suppression was

required.  Because the record supports the court's ruling, we affirm the ruling and remand for

further proceedings consistent with this opinion if the Commonwealth be so advised.

I.

At a hearing on a defendant's motion to suppress, the Commonwealth has "the heavy

burden" of proving the warrantless search or seizure did not violate the defendant's Fourth

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Amendment rights.[1] Megel v. Commonwealth, 262 Va. 531, 534, 551 S.E.2d 638, 640 (1989). On appeal of a ruling granting a defendant's motion to suppress, the Commonwealth has the burden to show that the trial court's ruling constituted reversible error. See Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). Our examination of this issue "presents a mixed question of law and fact that we review *de novo* . . . . In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment." Id. (citations omitted). The trial court is not required to make explicit findings of fact, and if it does not, we view the evidence in the light most favorable to the prevailing party, here the defendant, granting to the evidence all reasonable inferences fairly deducible therefrom. Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (en banc).

A.

GANT AND THE WARRANTLESS SEARCH OF A MOTOR VEHICLE

In Chimel v. California, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685, 694 (1960), the Court held that a search incident to arrest may include only "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." In New York v. Belton, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), applying Chimel in the automobile context, the Court "held that when an officer lawfully arrests 'the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile' and any containers therein." Gant, 556 U.S. at ___, 129 S. Ct. at 1717, 173

---

[1] A defendant first bears the burden of establishing a warrantless search or seizure implicating the Fourth Amendment has occurred. See United States v. Thompson, 409 F.2d 113, 117 (6th Cir. 1969); Sharpe v. Commonwealth, 44 Va. App. 448, 455, 605 S.E.2d 346, 349 (2004). No dispute exists over whether such a search occurred in this case.

L. Ed. 2d at 494 (quoting Belton, 453 U.S. at 460, 101 S. Ct. at 2864, 69 L. Ed. 2d at 775 (footnote omitted)). For more than twenty-five years thereafter, the 1981 decision in Belton "[was] widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there [was] no possibility the arrestee could gain access to the vehicle at the time of the search." Id. at ___, 129 S. Ct. at 1718, 173 L. Ed. 2d at 495.

In deciding Gant, however, the Court "narrow[ed]" the holding in Belton,[2] concluding that unless police have an independent basis for conducting a warrantless search of a vehicle, police "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Id. at ___ & n.9, 129 S. Ct. at 1723-24 & n.9, 173 L. Ed. 2d at 501 & n.9 (plurality op.); id. at ___, 129 S. Ct. at 1724-25, 173 L. Ed. 2d at 501-03 (Scalia, J., concurring). In reaching this conclusion, the Court noted Belton's purpose was to "protect[] arresting officers and safeguard[] any evidence of the offense of arrest that an arrestee might conceal or destroy" if he could reach the vehicle's passenger compartment, and it indicated if the arrestee could *not* "reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." Id. at ___, 129 S. Ct. at 1716, 173 L. Ed. 2d at 493.

In explaining its ruling, the Court noted Belton had involved a single police officer who, while carrying only one set of handcuffs, stopped a speeding car occupied by four people. Id. at

---

[2] Justice Stephens, throughout his plurality opinion, characterized the decision as adopting a "narrow" reading of Belton. E.g., 556 U.S. at ___, ___ n.9, 129 S. Ct. at 1719, 1722 n.9, 173 L. Ed. 2d at 496, 499 n.9. The four dissenters characterized the majority's holding as "substantially overruling Belton and Thornton [v. United States, 541 U.S. 615, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004)]." 556 U.S. at ___, 129 S. Ct. at 1727, 173 L. Ed. 2d at 505. Justice Scalia, although concurring in the judgment, noted his agreement with the dissenters' view that the ruling constituted a rejection of "what [he took] to be the rule set forth in [Belton] and Thornton." See id. at ___, 129 S. Ct. at 1724-25, 173 L. Ed. 2d at 501-03.

___ & n.1, 129 S. Ct. at 1716-17 & n.1, 173 L. Ed. 2d at 494 & n.1. Emanating from the car was the smell of marijuana, and in plain view on the floor, the officer saw an envelope he suspected contained marijuana. Id. at ___, 129 S. Ct. at 1717, 173 L. Ed. 2d at 494. Having probable cause to believe the vehicle's occupants had committed a drug offense, the officer ordered them out of the car, placed them under arrest and frisked them. Id. He then split them up, searched the vehicle, and found cocaine. Id. The Court concluded in Gant that a reading of Belton authorizing "a vehicle search . . . incident to every arrest of a recent occupant[, even though] in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search," is "clearly incompatible with our statement in Belton that it 'in no way alters the fundamental principles established in [Chimel] regarding the basic scope of searches incident to lawful custodial arrests.'" Id. at ___, 129 S. Ct. at 1719, 173 L. Ed. 2d at 496 (quoting Belton, 453 U.S. at 460 n.3, 101 S. Ct. at 2864 n.3, 69 L. Ed. 2d at 775 n.3).

The Court also created, however, a new facet to the search-incident-to-arrest rule, providing that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Id. at ___, 129 S. Ct. at 1719, 173 L. Ed. 2d at 496 (quoting Thornton v. United States, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137, 158 L. Ed. 2d 905, 920 (2004) (Scalia, J., concurring in the judgment)); see Armstead v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (July 27, 2010), slip op. at 6-7 (applying this facet of Gant rule to permit search).

The Court concluded that neither the traditional "reaching distance" rule nor the new "evidentiary search" rule provided a basis for searching Gant. Gant, 556 U.S. at ___, 129 S. Ct. at 1719, 173 L. Ed. 2d at 496-97. "Unlike in Belton, which involved a single officer confronted with four unsecured arrestees, the five officers in [Gant] outnumbered the three arrestees, all of

whom had been handcuffed and secured in separate patrol cars before the officers searched Gant's car." Id. The Court emphasized that "[b]ecause officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." Id. at ___ n.4, 129 S. Ct. at 1719 n.4, 173 L. Ed. 2d at 496 n.4. The Court noted "[a]n evidentiary basis for the search was also lacking in this case. Whereas Belton and Thornton were arrested for drug offenses, Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." Id. at ___, 129 S. Ct. at 1719, 173 L. Ed. 2d at 497.

The Court rejected the state's argument that an "expansive rule" permitting searches "regardless of the possibility of access in a given case" was "reasonable" because it "correctly balances law enforcement interests, including the interest in a bright-line rule, with an arrestee's limited privacy interest in his vehicle." Id. at ___, 129 S. Ct. at 1720, 173 L. Ed. 2d at 497. In doing so, the Court held "the State [both] seriously undervalues the privacy interests at stake" and "exaggerates the clarity that its reading of Belton provides." Id. at ___, 129 S. Ct. at 1720, 173 L. Ed. 2d at 497-98. It recognized that although "a motorist's privacy interest in his vehicle is less substantial than in his home, the former interest is nevertheless important and deserving of constitutional protection." Id. at ___, 129 S. Ct. at 1720, 173 L. Ed. 2d at 497 (citation omitted). The Court further explained that "a broad reading of Belton is . . . unnecessary to protect law enforcement safety and evidentiary interests" because "[o]ther established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand." Id. at ___, 129 S. Ct. at 1721, 173 L. Ed. 2d at 498-99 (citing Michigan v. Long, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); United States v. Ross, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)).

The Commonwealth avers the evidence here supports application of both justifications for a search incident-to-arrest under Gant or, alternatively, that the officers acted in good faith under existing Supreme Court precedent such that exclusion is not justified. For the reasons that follow, we reject these claims and conclude that suppression of the evidence was proper.

1. Search for Evidence Related to the Crime of Arrest

We hold the evidence, viewed in the light most favorable to defendant, supports the trial court's conclusion that the Commonwealth failed to prove it was "'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"[3] Id. at ___, 129 S. Ct. at 1719, 173 L. Ed. 2d at 496 (quoting Thornton, 541 U.S. at 632, 124 S. Ct. at 2137, 158 L. Ed. 2d at 920 (Scalia, J., concurring in the judgment)).

As to the offense for which defendant's vehicle was stopped, excessive window tint, Officer Kelly had already tested defendant's windshield and determined it violated the statute proscribing the degree of tinting allowable, and the Commonwealth makes no argument that any additional evidence concerning this offense was likely to have been found in a search of the interior of the vehicle or its locked glove compartment.

As to the "crimes of arrest" for which Officer Kelly took defendant into custody, he testified they were "firearms related." However, the crimes of arrest did not provide the basis for the stop of the vehicle in this case, and the record is devoid of any evidence of a temporal or spatial connection between the crimes of arrest and defendant's vehicle on the day of the stop. Instead, the crimes of arrest occurred on some unknown date or dates in the past and resulted in

---

[3] The Commonwealth contends this "reasonable to believe" language roughly equates with the reasonable suspicion standard. We need not decide this issue because, whether or not the standards are the same, the lack of evidence in this record supports the trial court's conclusion that the Commonwealth failed to prove it was reasonable for the officers to believe evidence of defendant's outstanding "firearms related" charges might be found in his car at the time of the search at issue.

- 6 -

the issuance of three arrest warrants. Officer Kelly recalled nothing else about these offenses when he testified at the suppression hearing, and the Commonwealth failed to offer any additional evidence about the offenses—i.e., the specific nature of the offenses, when they were alleged to have occurred, or whether defendant's vehicle was involved. Thus, the record, viewed in the light most favorable to defendant, supports the trial court's conclusion that "[t]here was no evidence [that] any evidence [of the offenses] for which he [was being] arrested could be found [in the vehicle]." See People v. Chamberlain, 229 P.3d 1054, 1056-57 (Colo. 2010) (holding fact that evidence of past crime may exist and is capable of being concealed in a vehicle does not, without more, establish it was "reasonable to believe" such evidence might be found in search of vehicle); State v. Buelna Valdez, 224 P.3d 751, 778 (Wash. 2009) (where traffic stop resulted in arrest on outstanding warrant, holding vehicle search was not justified because "the State [did] not show[] that it was reasonable to believe that evidence relevant to the [unnamed] underlying crime might be found in the vehicle"). Absent information providing a temporal or spatial nexus between those prior offenses and arrest warrants, on one hand, and defendant and his vehicle on the day of the traffic stop, on the other, it was not reasonable for the officers to believe the vehicle might contain evidence of the specific crimes for which the warrants had been issued. Cf. Smith v. Commonwealth, 55 Va. App. 30, 46-47, 683 S.E.2d 316, 324-25 (2009) (applying nexus principles to evaluate existence of reasonable suspicion).

This manifestly is not a question of whether defendant was likely to be armed based on his possible prior involvement with firearms but rather whether it was reasonable to believe evidence of the crime of arrest might be found in the vehicle. The fact that defendant was alleged to have been involved with firearms in some fashion before and could, in theory, have concealed a firearm in the vehicle he was driving at the time of the stop certainly indicates Officer Kelly was wise in exercising caution and waiting for backup officers to arrive before he

removed defendant from the vehicle. However, absent additional information, the mere existence of these firearm "related" warrants did not provide a reasonable basis under <u>Gant</u> for the officers to search the vehicle *after* defendant and his passenger had been removed and secured.

### 2. "Wingspan" or "Reaching Distance" Search

We hold the evidence, viewed in the light most favorable to defendant, also supports the trial court's conclusion that the Commonwealth failed to prove the search was supported by the revised <u>Belton</u> test, which required proof that defendant was "unsecured and within reaching distance of the passenger compartment *at the time of the search*." <u>See</u> <u>Gant</u>, 556 U.S. at ___, 129 S. Ct. at 1719, 173 L. Ed. 2d at 496 (emphasis added). As the Court recognized when it narrowed <u>Belton</u> in <u>Gant</u>, "[b]ecause officers have *many* means of ensuring the safe arrest of vehicle occupants, *it will be the rare case* in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." <u>Id.</u> at ___ n.4, 129 S. Ct. at 1719 n.4, 173 L. Ed. 2d at 496 n.4 (emphases added).

The trial court found as a fact that when the officers conducted the search of the locked glove compartment, defendant "was already out of the car and back with the officers at the rear of the car" and that he had "[n]o access to the car or any inner parts of the car or the glove box or anything else." The evidence established that the only civilians at the scene were appellant and his passenger, and Officer Kelly testified that "several" officers in addition to him were present when the search of the vehicle took place. Officer Grace "was with the passenger," and Officer Kelly and Officer Dirmeyer alternated exercising "control of the defendant." Officer Kelly took defendant into custody on the outstanding warrants, moved him to a location behind defendant's car, and searched him. Officer Dirmeyer discovered the locked glove compartment, but after he tried unsuccessfully to open it, Officer Dirmeyer "*took control* of [defendant]" while Officer

- 8 -

Kelly tried to open the glove compartment. (Emphasis added). When Officer Kelly, too, failed to open it, he "went right back and *took control* of the defendant" again. (Emphasis added). Officer Dirmeyer then resumed his efforts to open the locked glove compartment and finally succeeded. Thus, the record establishes that the passenger was with Officer Grace and that defendant was under the control of Officer Kelly or Officer Dirmeyer both before and during the search of the glove compartment. Further, although not dispositive on the facts of this case, the Commonwealth failed to offer any evidence that defendant and the passenger were not handcuffed and also failed to offer any evidence that defendant or the passenger had access to a key to the locked glove compartment.[4] These facts support the trial court's finding that the Commonwealth failed to prove defendant or his passenger had any real possibility of accessing the vehicle or its locked glove compartment at the time the vehicle search took place.

B.

THE EXCLUSIONARY RULE'S GOOD FAITH EXCEPTION

The Commonwealth contends that even if the search violated the Fourth Amendment, the officers relied in good faith on the bright-line rule established in Belton and applied in Glasco v. Commonwealth, 257 Va. 433, 441, 513 S.E.2d 137, 142 (1999). As a result, it argues, the suppression of the fruits of the search of defendant's car was reversible error. We agree that the only evidence in the record indicates the officers acted with the *subjective* intention of following case precedent as it existed at the time of the search and that their actions, in fact, conformed to that precedent. We disagree, however, that this supports application of the good faith exception.

We have previously addressed the impact of the Court's holding in Gant on the applicability of the good faith exception to the exclusionary rule. In Smith, 55 Va. App. at 51,

_____

[4] Even if one might presume the key to the car's ignition would open the glove compartment, the evidence failed to establish who had possession of the key after defendant turned off the ignition and exited the vehicle as Officer Kelly requested.

683 S.E.2d at 327, based in part on the holding in <u>Gant</u>, we considered and dismissed a claim that the Court's decision in <u>Herring v. United States</u>, 555 U.S. ___, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009), "extend[ed] . . . the good faith exception to admit the fruits of a warrantless frisk or search based on the searching police officer's honest but erroneous belief about what the Fourth Amendment requires."  We reasoned as follows in <u>Smith</u>:

> [I]n <u>Gant</u>, [argued the same day as and] decided . . . just three months after [<u>Herring</u>], the Court addressed [a] case involving wholly warrantless Fourth Amendment activity and held the search at issue was unconstitutional.  In doing so, the Court noted that because a view of the law contrary to what the Court held in <u>Gant</u> "has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding."  Nevertheless, . . . the majority . . . in <u>Gant</u> made [no] mention of good faith principles[5] . . . , and [it] affirmed the lower court's exclusion of the evidence.  In sum, the Court held implicitly that although the officers conducting the search relied in good faith on existing case law, this reliance did not excuse the Fourth Amendment violation . . . .
>
> From the[] rulings [in <u>Gant</u> and the earlier <u>United States v. Hensley</u>, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985)], we conclude that, despite the breadth of some of the . . . language in <u>Herring</u>, [the Court in <u>Gant</u>] did not narrow the exclusionary rule beyond the bounds previously defined and that the good faith exception does not apply to a police officer's honest but erroneous legal conclusion that a particular set of facts provides him with the [requisite legal basis] for a [warrantless] seizure or search.

<u>Smith</u>, 55 Va. App. at 51-52, 683 S.E.2d at 327 (quoting <u>Gant</u>, 556 U.S. at ___ n.11, 129 S. Ct. at 1723 n.11, 173 L. Ed. 2d at 500 n.11) (footnote added) (citations omitted); <u>see</u> <u>id.</u> at 50-51, 683 S.E.2d at 326-27 (summarizing the circumstances in which good faith applies).

---

[5] The decision in <u>Smith</u> erroneously indicated that "neither the majority *nor the dissent* [in <u>Gant</u>] made any mention of good faith principles in reference to the criminal trial suppression issue."  55 Va. App. at 51, 683 S.E.2d at 327 (emphasis added).  In fact, the dissenters in <u>Gant</u> referenced good faith in *two* contexts, one which, as stated in <u>Smith</u>, did not relate to the criminal trial suppression issue, <u>see</u> <u>Gant</u>, 556 U.S. at ___, 129 S. Ct. at 1728, 173 L. Ed. 2d at 506, and one which did, <u>see</u> <u>infra</u> p. 11.

- 10 -

We continue to adhere to this analysis. Whether the majority holding in <u>Gant</u> constituted an overruling of <u>Belton</u> or a mere narrowing of it,[6] it created a sea change in the dominant understanding of the law defining the scope of the search of a vehicle permitted incident to an occupant's arrest. We feel confident the majority in <u>Gant</u> would have addressed the good faith exception to the exclusionary rule if it had intended in <u>Gant</u> or <u>Herring</u> to expand application of that exception beyond the bounds previously imposed. The dissenters in <u>Gant</u> addressed the exception, opining "[t]he Court's decision will cause the suppression of evidence gathered in many searches carried out in good faith reliance on well-settled case law." <u>Gant</u>, 556 U.S. at ___, 129 S. Ct. at 1726, 173 L. Ed. 2d at 504. The majority did not dispute this assertion, noting that "individuals' interest in [the] discontinuance [of an unlawful practice] clearly outweighs any law enforcement 'entitlement' to its persistence" and that "[b]ecause a broad reading of <u>Belton</u> has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding." <u>Id.</u> at ___ & n.11, 129 S. Ct. at 1722-23 & n.11, 173 L. Ed. 2d at 500 & n.11; <u>see</u> <u>Megginson v. United States</u>, 556 U.S. ___, 129 S. Ct. 1982, 173 L. Ed. 2d 1288 (vacating in light of <u>Gant</u>), <u>remanded to</u> 340 Fed. Appx. 856 (4th Cir. 2009) (per curiam) (unpublished table decision) (concluding the search of the appellant's car was unconstitutional and, without mentioning the good faith exception, holding suppression was required); <u>Majette v. United States</u>, 556 U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (vacating in light of <u>Gant</u>), <u>remanded to</u> 326 Fed. Appx. 211 (4th Cir. 2009) (per curiam) (unpublished table decision) (applying <u>Gant</u> and "remand[ing] for a new trial, if the government chooses to have one," without discussing the good faith exception).

The majority—by discussing qualified immunity but not good faith, despite the dissenters' observations about good faith and suppression—clearly recognized the good faith

---

[6] <u>See</u> *supra* note 2.

exception did not apply in the case of changes in the law caused by the Supreme Court's reversal of its prior Fourth Amendment precedent. Numerous other courts join our conclusion that the good faith exception does not apply under such circumstances. See, e.g., United States v. Gonzalez, 578 F.3d 1130, 1131-33 (9th Cir. 2009).[7]

Thus, here, like in Gant, the honest but erroneous legal conclusion of the officers that their arrest of defendant on the outstanding warrants justified their search of his vehicle does not permit invocation of the good faith exception to the exclusionary rule.

## II.

For these reasons, we hold the record on appeal supports the trial court's ruling that the Commonwealth failed to prove either that an exception to the warrant requirement applied or that the good faith exception to the exclusionary rule excused the Fourth Amendment violation. Thus, we affirm the trial court's ruling suppressing the evidence, and we remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

Affirmed and remanded.

---

[7] Other such opinions include United States v. Buford, 623 F. Supp. 2d 923, 925-27 (M.D. Tenn. 2009); People v. McCarty, 229 P.3d 1041, 1045-46 (Colo. 2010); State v. Arnold, 914 N.E.2d 1143, 1157-58 (Ill. App. Ct. 2009); and State v. Harris, 224 P.3d 830, 836 (Wash. Ct. App. 2010). See generally United States v. DeBruhl, 993 A.2d 571, 585-89 (D.C. 2010) (discussing the dangers associated with applying the good faith exception to police officers' interpretations of the law established by judicial decisions, including "the concern that unless the courts define 'settled law' tightly enough to provide an unambiguous road map to guide the warrantless search, the courts will be merging the discredited 'mistake-of-law' defense into the good-faith exception, with all the mischief that this could entail" (citation omitted)).
    We recognize a split of authority exists on this issue. See, e.g., United States v. Davis, 598 F.3d 1259, 1263-68 (11th Cir. 2010). However, we conclude the better reasoned approach is that the good faith exception does not apply when the Supreme Court overrules constitutional precedent.